1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9   GAVINO SALAS, JR.,                        CV F   07-0095 OWW SMS HC

10                    Petitioner,         FINDINGS AND RECOMMENDATIONS
                                          REGARDING FIRST AMENDED PETITION
11        v.                              FOR WRIT OF HABEAS CORPUS

12                                        [Doc. 1]
     JEFF WRIGLEY,
13                                        ORDER DIRECTING CLERK OF COURT TO
                      Respondent.         SERVE FINDINGS AND
14   _____/    RECOMMENDATIONS

15
16          Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas corpus

17   pursuant to 28 U.S.C. § 2241.

18                                  **BACKGROUND**[1]

19          Petitioner is currently in custody of the Bureau of Prisons ("BOP") at the Taft

20   Correctional Institutional in Taft, California, pursuant to a criminal judgment.  Petitioner was

     sentenced to serve a 12 month one day in prison.  Petitioner currently has a projected release date
21
     of August 3, 2007.
22
23          On January 18, 2007, Petitioner filed the instant federal petition for writ of habeas corpus

24   in this Court.  Petitioner claims the BOP is unlawfully denying him consideration for placement

     into a Residential Re-entry Center ("RRC").
25
26                                    **DISCUSSION**

27   A.     Standard of Review

28
          [1]This information was derived from the petition for writ of habeas corpus.

1   Writ of habeas corpus relief extends to a person in custody under the authority of the

2   United States.  <u>See</u> 28 U.S.C. § 2241. Writ of habeas corpus relief is available if a federal

3   prisoner can show he is "in custody in violation of the Constitution or laws or treaties of the

4   United States."  28 U.S.C. § 2241(c)(3).  Petitioner's claims are proper under 28 U.S.C. § 2241

5   and not 28 U.S.C. § 2255 because they concern the manner, location, or conditions of the

6   execution of petitioner's sentence and not the fact of petitioner's conviction or sentence. <u>Tucker</u>

7   <u>v. Carlson</u>, 925 F.2d 330, 331 (9th Cir.1990) (stating that a challenge to the execution of a

8   sentence is "maintainable only in a petition for habeas corpus filed pursuant to 28 U.S.C. §

9   2241"); <u>Montano-Figueroa v. Crabtree</u>, 162 F.3d 548, 549 (9th Cir.1998) (*per curiam*) (allowing

10  a federal prisoner to use § 2241 to challenge the BOP's restitution policies).

11  Further, Petitioner is challenging the execution of his sentence at the Taft Correctional

12  Institution in Taft which is within the Fresno Division of the Eastern District of California;

13  therefore, the Court has jurisdiction over this petition. <u>See Brown v. United States</u>, 610 F.2d 672,

14  677 (9th Cir. 1990).

15  B.      Exhaustion of Administrative Remedies

16  A petitioner who is in federal custody and wishes to seek habeas relief pursuant to 28

17  U.S.C. § 2241 must first exhaust available administrative and judicial remedies. <u>Brown v. Rison</u>,

18  895 F.2d 533, 535 (9th Cir.1990); <u>Chua Han Mow v. United States,</u> 730 F.2d 1308, 1313 (9th

19  Cir.1984).  It is only after a petitioner has fully exhausted his administrative remedies that he

20  becomes entitled to present his claims to the federal court. <u>See</u> <u>United States v. Mathis</u>, 689 F.2d

21  1364, 1365 (11th Cir.1982).  In <u>Ruviwat v. Smith</u>, 701 F.2d 844, 845 (9th Cir.1983) (*per*

22  *curiam*), the Ninth Circuit explained why a petitioner must first exhaust his administrative

23  remedies before filing for habeas relief: "The requirement of exhaustion of remedies will aid

24  judicial review by allowing the appropriate development of a factual record in an expert forum;

25  conserve the court's time because of the possibility that the relief applied for may be granted at

26  the administrative level; and allow the administrative agency an opportunity to correct errors

27  occurring in the course of administrative proceedings. <u>See also</u> <u>Chua Han Mow</u>, 730 F.2d at

28  1313.

1    However, the exhaustion requirement was judicially created; it is not a statutory

2    requirement. Chua Han Mow, 730 F.2d at 1313; Montgomery v. Rumsfeld, 572 F.2d 250, 252

3    (9th Cir.1978). Because exhaustion is not required by statute, it is not jurisdictional. Morrison -

4    Knudsen Co., Inc. v. CHG Int'l, Inc., 811 F.2d 1209, 1223 (9th Cir.1987), *cert. dismissed*, 488

5    U.S. 935 (1988); Montgomery, 572 F.2d at 252.  "Where exhaustion of administrative remedies

6    is not jurisdictional, the district court must determine whether to excuse the faulty exhaustion and

7    reach the merits, or require the petitioner to exhaust his administrative remedies before

8    proceeding in court." Brown, 895 F.2d at 535.

9    The Bureau of Prisons has established an administrative remedy procedure governing

10   prisoner complaints. The procedure is set forth at 28 C.F.R. § 542.10 et. seq. First, an inmate

11   must attempt to resolve the issue informally by presenting it to staff before submitting a Request

12   for Administrative Remedy. 28 C.F.R. § 542.13 (1999). If dissatisfied with the response, the

13   prisoner may proceed with the formal filing of an Administrative Remedy Request. 28 C.F.R. §

14   542.14 (1999). Upon denial by the institution, the prisoner may appeal the decision by filing a

15   complaint with the Regional Director of the Bureau of Prisons. 28 C.F.R. § 542.15 (1999). The

16   Regional Director's decision may be appealed to the General Counsel in Washington, D.C. Id.

17   Appeal to the General Counsel is the final step in the administrative remedy process. Id.

18   Petitioner does not state whether he has exhausted the administrative remedies.  Even if

19   Petitioner has not exhausted the administrative remedies with respect to the claims in the instant

20   petition, exhaustion in this instance would nonetheless be futile. Futility is an exception to the

21   exhaustion requirement. Laing v. Ashcroft, 370 F.3d 994, 1000-01 (9th Cir. 2004), citing S.E.C.

22   v. G.C. George Sec., Inc., 637 F.2d 685, 688 n.4 (9th Cir. 1981) ("exceptions to the general rule

23   requiring exhaustion cover situations such as where administrative remedies are inadequate or

24   not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury

25   will result, or the administrative proceedings would be void.")

26   C.    BOP Regulations Contradict United States Code Statutes

27   As previously stated, Petitioner contends that BOP regulations which prevent him from

28   being considering for release to RRC violate Title 18, Section 3621(b), of the United States

3

1  Code. See Petition at 4-6. Petitioner states that pursuant to the BOP regulations, he has not been

2  properly assessed for placement in an RRC. Id. at 6.

3           Title 18, of the United States Code, Section 3621(b) states:

4           (b)  Place of imprisonment - - The Bureau of Prisons shall designate the place of
            the prisoner's imprisonment.  The Bureau may designate any available penal or
5           correctional facility that meets minimum standards of health and habitability
            established by the Bureau, whether maintained by the Federal Government or
6           otherwise and whether within or without the judicial district in which the person
            was convicted, that the Bureau determines to be appropriate and suitable,
7           considering --
            (1) the resources of the facility contemplated;
8           (2) the nature and circumstances of the offense;
            (3) the history and characteristics of the prisoner;
9           (4) any statement by the court that imposed the sentence - -
                 (A) concerning the purposes for which the sentence to imprisonment was
10          determined to be warranted; or
                 (B) recommending a type of penal or correctional facility as appropriate; and
11          (5) any pertinent policy statement issued by the Sentencing Commission pursuant
            to section 994(a)(2) of title 28.

12
            In designating the place of imprisonment or making transfers under this
13          subsection, there shall be no favoritism given to prisoners of high social or
            economic status.  The Bureau may at any time, having regard for the same
14          matters, direct the transfer of a prisoner from one penal or correctional facility to
            another.  The Bureau shall make available appropriate substance abuse treatment
15          for each prisoner the Bureau determines has a treatable condition of substance
            addiction or abuse.

16
    Section 3624(c) states:
17
            (c) Pre-release custody - - the Bureau of Prisons shall, to the extent practicable,
18          assure that a prisoner serving a term of imprisonment spends a reasonable part,
            not to exceed six months, of the last 10 per centum of the term to be served under
19          conditions that will afford the prisoner a reasonable opportunity to adjust to and
            prepare for the prisoner's re-entry into the community.  The authority provided by
20          this subsection may be used to place a prisoner in home confinement.  The United
            States Probation System shall, to the extent practicable, offer assistance to a
21          prisoner during such pre-release custody.

22  The relevant BOP regulations state the following:

23          (a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of
    discretion for designating inmates to community confinement.  The Bureau designates
24  inmates to community confinement only as part of pre-release custody and programming
    which will afford the prisoner a reasonable opportunity to adjust to and prepare for
25  re-entry into the community.

26  See 28 C.F.R. § 570.20(a).

27          Section 570.21 states:

28          (a) The Bureau will designate inmates to community confinement only as part of

4

1  pre-release custody and programming, during the last ten percent of the prison sentence
2  being served, not to exceed six months.

3        (b) We may exceed these time-frames only when specific Bureau programs allow
   greater periods of community confinement, as provided by separate statutory authority
   (for example, residential substance abuse treatment program (18 U.S.C. 3621(e)(2)(A)),
4  or shock incarceration program (18 U.S.C. 4046(c)).

5        Prior to December 13, 2002, the BOP would occasionally allow prisoners to serve all or

6  part of their imprisonment in an RRC.[2] Then, on December 13, 2002, the Office of Legal

7  Counsel of the Department of Justice ("OLC") issued a legal opinion interpreting the interplay

8  between §§ 3621(b) and 3624(c) of Title 18. The opinion held that § 3621(b) did not authorize

9  the BOP to place an inmate in an RRC for the entire term of his sentence because community

10 confinement did not constitute imprisonment. Id. The BOP consequently changed its procedure

11 and limited RRC placements for prisoners to the final 10% of their sentences or six months,

12 whichever was shorter.

13       However, in 2004, two Circuit Courts of Appeal held that the 2002 BOP policy change

14 was unlawful given that the plain language of § 3621(b) gave the BOP discretion to transfer an

15 inmate to an RRC at any time. Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004); Goldings v. Winn,

16 383 F.3d 17 (1st Cir. 2004). In light of the opinions of Elwood and Goldings, on August 18, 2004,

17 the BOP proposed new regulations "announcing its categorical exercise of discretion for

18 designating inmates to community confinement when serving terms of imprisonment." 69 Fed.

19 Reg. 51, 213 (Aug. 18, 2004). Although the 2005 regulations acknowledged the BOP's general

20 discretion to place an inmate at an RRC at any time, it limited such placement to the lesser of

21 10% of a prisoner's total sentence or six months, absent application of special statutory

22 circumstances. 28 C.F.R. §§ 570.20, 570.21. The final rules were published on January 10, 2005,

23 and became effective on February 14, 2005.

24       The question to be resolved here is whether the BOP's 2005 regulations are contrary to,

25 ────────────────

26    [2]The Court hereby takes judicial notice of Arcediano v. Wrigley, Case No. 1:06-CV-00780 AWI DLB HC.
   This Court "may take notice of proceedings in other courts, both within and without the federal judicial system, if
27 those proceedings have a direct relation to matters at issue." U.S. ex rel. Robinson Rancheria Citizens Council v.
   Borneo, Inc., 971 F.2d 244 (9th Cir.1992); see also MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986);
28 United States v. Wilson, 631 F.2d 118, 119 (9th cir. 1980) Arcediano is factually congruent with the instant case.
   Therefore, the Court's opinion in this case will be derived from the record developed in Arcediano.

1  or a permissible construction of, Section 3621(b).

2  　　　Three Circuit Courts of Appeal and several District Courts, including this Court, have

3  found the 2005 regulations to be contrary to Section 3621(b). Woodall v. Federal Bureau of

4  Prisons, 432 F.3d 235, (3rd Cir. 2005); Fults v. Sanders, 442 F.3d 1088 (8th Cir. 2006); Levine v.

5  Apker, 455 F.3d 71 (2d Cir. 2006); Horn v. Ellis, No. 06 CV-F-0006 OWW TAG HC; 2006 WL

6  1071959 (E.D. Cal. April 21, 2006)[3]; Baker v. Willingham, No. 3:04cv1923, 2005 WL 2276040

7  (D.Conn. Sept. 16, 2005); Wiederhorn v. Gonzales, No. 05-360-TC, 2005 WL 1113833 (D.Or.

8  May 9, 2005); United States v. Paige, 369 F.Supp.2d 1257 (D. Mont. 2005); Drew v. Menifee,

9  No. 04 Civ. 9944, 2005 WL 525449 (S.D.N.Y. Mar. 4, 2005); Pimentel v. Gonzales, 367

10  F.Supp.2d 365 (E.D.N.Y. 2005); Cook v. Gonzales, No. 05-09-AS, 2005 WL 773956 (D.Or.

11  Apr. 5, 2005); Crowley v. Fed. Bureau of Prisons, 312 F.Supp.2d 453 (S.D.N.Y. 2004). The

12  Ninth Circuit Court of Appeals has not addressed the issue.

13  　　　In reviewing an agency's construction of a statute, courts apply the test set forth in

14  Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). The

15  Court looks first to the text of the statute to determine whether Congress has spoken directly on

16  the issue. Contract Management, Inc. v. Rumsfeld, 434 F.3d 1145, 1146-47 & n.2 (9th Cir. 2006).

17  If the intent of Congress is clear from the text of the statute, that is the end of the inquiry, the

18  Court must follow the expressed intent of Congress. Id. at 1146-47, citing Chevron, U.S.A., Inc.

19  v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

20  If, however, the statute is silent or ambiguous on the specific issue, the Court must determine

21  whether the agency's interpretation is based on a permissible construction of the statute. Id. at

22  1147. If so, the Court defers to the agency's determination. Id.

23  　　　As found by the Second, Third, and Eighth Circuit Courts of Appeal, this Court finds that

24  the plain text of the statute, as well as the legislative history do not support the BOP's regulations

25

26  　　　[3] In the April 21, 2006, order, Judge Wanger directed Respondent to show cause why the petition should
not be granted, and directed Respondent to immediately consider whether Petitioner should be transferred to a CCC,

27  without reference to the BOP's 2002 and 2005 policies, including 28 C.F.R. §§ 570.20-21. Respondent filed a
response to the order to show cause on May 9, 2006, arguing that the Court's holding is contrary to the reasoning in

28  United States v. Latimer, 991 F.2d 1509 (9th Cir. 1993). The Court has not yet issued a ruling on Respondent's
response to the order to show cause.

1  to limit RRC placement to only those inmates serving the last 10% of their sentence. As stated in

2  § 3624(c), Congress's intent to release prisoners to an RRC is to facilitate their re-entry into the

3  community.  Congress has unambiguously set forth five factors for the BOP to consider when

4  making its determination to release a prisoner.  18 U.S.C. § 3621(b).  Specifically, Section

5  3621(b) distinguishes between the BOP's duty to designate a place of imprisonment ("shall

6  designate") and its broad discretion in determining the specific place of imprisonment ("may

7  designate any available penal or correctional facility").  Levine, 455 F.3d at 80.  The statute not

8  only provides discretion to the BOP for placement, but provides a specific list of five factors the

9  BOP must consider prior to placement. Id. Given the clear text of the statute and Congress's

10 unequivocal intent for the BOP to consider all five factors, the current BOP regulation is invalid

11 because "these factors cannot be fully considered because the amount of time an inmate may

12 spend in a CCC is categorically limited to the lesser of six months or ten percent of a sentence

13 without regard to individualized circumstances."  Woodall, 432 F.3d 235, 245; Levine, 455 F.3d

14 at 80-82; Fults, 442 F.3d at 1091.  Further, the legislative history supports the finding that

15 consideration of the five factors are mandatory, although non-exclusive.  As set forth in Levine v.

16 Apker, 455 F.3d 71, the Second Circuit stated:

17       Accompanying § 3621(b), the Senate Judiciary Committee issued a report
         speaking directly to the nature of the statutory factors. . . . The report stated that
18       '[i]n determining the availability or suitability of the facility selected, the Bureau
         [is] specifically required to consider such factors as [those listed in § 3621(b)],'
19       and that '[a]fter considering these factors,' the BOP may designate a place of
         imprisonment or enact an inmate transfer.  S.Rep. No. 98-225 (1983), reprinted in
20       1984 U.S.C.C.A.N. 3182, 3324-25; *see also Woodall*, 432 F.3d at 245-46 (quoting
         same).  The report disavows any restriction on the BOP's exercise of discretion,
21       but rather states that it 'intends simply to set forth the appropriate factors that the
         Bureau should consider in making the designations.'  Id.  By 'specifically
22       requir[ing]' the BOP to consider the listed factors before it makes placements and
         expressing intent to 'set forth the appropriate factors' to be considered, the report
23       underscores what the textual language itself makes clear: that the enumerated
         factors are mandatory. (footnote omitted).

24 Levine, at 82.

25       Thus, although the BOP has discretion to refuse to place an inmate in a correctional

26 facility, the exercise of discretion must be based at least in part on the specific factors outlined in

27 § 3621(b), and the BOP regulations set forth in §§ 570.20 and 570.21 simply ignore those

28 factors.  As such, the regulations contradict, rather than interpret, § 3621(b), and no deference is

1  owed.

2          In <u>Arcediano</u>, Respondent argued that the language of § 3624(c) states "unambiguously

3  that prisoners have no right to be considered for an RRC placement until they have finished 90%

4  of their sentence." <u>See</u> <u>Arcediano v. Wrigley</u>, Case No. 1:06-CV-00780 AWI DLB HC.

   However, Respondent fails to recognize that by creating a blanket rule against transfer until the

5  inmate has served 10% of his sentence, the BOP has failed to consider the mandatory factors set

6  forth in § 3621(b).  <u>Woodall</u>, 432 F.3d at 250.  As stated in <u>Woodall</u>, "§ 3624 does not determine

7  when the BOP should *consider* CCC placement, but when it must *provide* it." <u>Id</u>. (Emphasis in

8  original.)  "The statute requires the BOP not just to consider, but to actually *place* an inmate in a

9  CCC or like facility, during the last ten percent or six months of the sentence, when that is

10 possible." <u>Id</u>. (Emphasis in original.)

11         Three of the five factors set forth in § 3621(b) - the nature and circumstances of a

   prisoner's offense, the history and characteristics of the prisoner, and any statement by the court

12 that imposed the sentence - require specific analysis to each individual prisoner. <u>Levine</u>, 455 F.3d

13 at 86; <u>Woodall</u>, 432 F.3d at 247; <u>Fults</u>, 442 F.3d at 1091. Yet, under the 2005 regulations, these

14 considerations cannot be fully considered.  As illustrated by the Court in <u>Woodall</u>, which stated:

15                 Worthy of special mention is the recommendation of the
                   sentencing judge.  United States District Judges take their
16                 sentencing responsibilities very seriously and are familiar with the
                   various BOP institutions and programs.  Their recommendations as
17                 to the execution of sentences are carefully thought out and are
                   important to them.  The significance of this aspect of the
18                 sentencing process is highlighted by the acknowledgment of the
                   regional counsel of the BOP at oral argument that the BOP follows
19                 judicial recommendations in approximately 85-90 percent of all
                   cases.  Here, however, the requirement that the BOP consider a
20                 sentencing judge's recommendation cannot be satisfied without an
                   individualized, case-by-case inquiry that is impossible under the
21                 regulations.

22         <u>Woodall</u>, 432 F.3d at 247.  In <u>Woodall</u>, the Court recognized that the sentencing court

23 had recommended the petitioner spend six months at a halfway house placement, but under the

24 current regulations, that recommendation could not be fully considered. <u>Id</u>. at 248.  "In fact, *no*

25 recommendation of a CCC placement exceeding six months or ten percent of a sentence can be

26 considered." <u>Id</u>. Although the BOP can consider the amount of time the prisoner has actually

27 served in making placements, that factor cannot be the single consideration, which is precisely

28 what the 2005 regulations have done.

1    In Arcediano, Respondent alleged his view is supported by the Ninth Circuit's decision in

2    United States v. Latimer, 991 F.2d 1509, 1514-15 (9th Cir. 1993).  In Latimer, the Ninth Circuit

3    held that the language of the Sentencing Guidelines, specifically section 4A1.2(e)(1), did not

4    define incarceration to include detention solely in a community treatment center or halfway

5    house.  Latimer, 991 F.2d at 1514.  Respondent argued that the Office of Legal Counsel's

6    December 13, 2002, opinion used similar reasoning in determining that the guidelines did not

7    permit the BOP to substitute confinement in an RRC for a term of imprisonment.  In Arcediano,

8    this Court did not find Respondent's argument persuasive. As Respondent acknowledged, the

9    case does not involve a prisoner who was directly placed into an RRC at the outset of his

10   sentence.  Thus, this Court determined it need not reach Respondent's argument.

11       Respondent further argued that the case is similar to Lopez v. Davis, 531 U.S. 230

12   (2001), which addressed § 3621(e)(2)(B), a different subsection.  In Lopez, the Supreme Court

13   analyzed and upheld a BOP regulation that categorically denied early release to certain inmates

14   after completion of a drug rehabilitation program, who would have otherwise been released under

15   the terms of the statute.  Lopez, 531 U.S. at 238.  The statute at issue there, 18 U.S.C. §

16   3621(e)(2)(B), stated that the BOP may reduce the prison term of an inmate who was convicted

17   of a "nonviolent offense" and had successfully completed a substance abuse program. Id. at 232.

18   The BOP's regulation interpreting that statute categorically denied early release to prisoners who

19   had been convicted of a felony involving "the carrying, possession, or use of a firearm."  Id.,

20   quoting 28 C.F.R. § 550.58(a)(1)(vi)(B)).  The Supreme Court held that the BOP had properly

21   exercised its discretion by furthering Congress's intent to exclude certain violent inmates from

22   consideration for pre-release. Id.

23       Respondent reasoned that "[j]ust as § 3621(e)(2)(B) vests broad discretion in the BOP to

24   determine which individuals are candidates for early release, so too § 3621(b) gives the BOP

25   broad discretion in deciding where to designate inmates.  The BOP's decision to restrict RRC

26   placements to prisoners serving the last 10% of their sentences is a categorical expression of the

27   BOP's discretion that does not differ fundamentally from the BOP's exercise of the same

28   discretion under § 3621(e)(2)(B)."  See Arcediano, 1:06-CV-00780 AWI DLB HC.  The BOP

undoubtedly may exercise discretion under § 3621(b), however, it is not free to disregard the specific factors set forth by Congress when doing so.  Although Respondent argued that "the categorical exercise of discretion in <u>Lopez</u> used factors such as sentencing enhancements which were not determinative of being 'violent' under some circuits" and therefore broadened the definition, this argument overlooks the fact that the statute at issue there did not specifically include a set of factors to be considered by the BOP in making its determination of whether an offense could be classified as "violent."  In <u>Lopez</u>, the BOP had simply filled in a statutory gap, whereas here, no such claim can be made because the BOP has specifically excluded from consideration the very factors that Congress outlined for consideration.

Based on the foregoing, the Court finds that the BOP regulations contradict, rather than interpret, Congress's intent in enacting 18 U.S.C. §§ 3621(b) and 3624(c).

## RECOMMENDATION

Accordingly, IT IS HEREBY RECOMMENDED that the petition for a writ of habeas corpus be GRANTED and Respondent be ORDERED to consider within fourteen (14) days from the District Judge's order, the appropriateness of transferring Petitioner to an RRC in light of the factors set forth in § 3621(b), not excluding any other factors deemed appropriate by the BOP, without reference to the BOP policy promulgated in December 2002 and without reference to the BOP's February 14, 2005, amendment to 28 C.F.R. § 570.21.

This Findings and Recommendation is submitted to the assigned District Judge, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within ten (10) court days (plus three (3) days for mailing) after being served with the Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

1

**ORDER**

2        IT IS HEREBY ORDERED that the Clerk of Court is DIRECTED to serve a copy of this

3   Findings and Recommendations on Petitioner and Respondent.

4

5

6        IT IS SO ORDERED.

7   **Dated:    February 9, 2007**          **/s/ Sandra M. Snyder**
     icido3                        UNITED STATES MAGISTRATE JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28